UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOSEPH T. REDAL,<br><br>                    Plaintiff,<br>    v.<br><br>ADAM MERRITT et al.,<br><br>                    Defendants. | CASE NO. 3:23-cv-05782-DGE<br><br>ORDER ON MOTION TO DISMISS (DKT. NO. 6) |

This matter comes before the Court on Defendants' motion to dismiss. (Dkt. No. 6.) For the reasons discussed herein, Defendants' motion is GRANTED.

**I.       FACTUAL AND PROCEDURAL BACKGROUND**

This case stems from an incident that occurred at Plaintiff Joseph Redal's home in Bremerton, Washington on September 2, 2020. Plaintiff contends he was sitting on his front porch early in the evening when he noticed a car "illegally parking" on his street. (Dkt. No. 1 at 3–4.) Plaintiff claims he was approximately 50 feet away from the car when he called out to the car's driver, saying "You cannot go up a one-way road." (*Id.* at 4.) The car's driver rolled down

his window and shouted something at Plaintiff. (*Id.*) Plaintiff responded by telling the driver to leave, which he did. (*Id.*) Plaintiff sat back down on his porch. (*Id.*)

Plaintiff was sitting on his front porch when squad cars from the Bremerton Police Department arrived and parked down the street from Plaintiff's home. (*Id.*) Plaintiff assumed the police were responding to an incident elsewhere in his neighborhood, and went inside his home. (*Id.*) While he was inside, a police officer called Plaintiff on the telephone. (*Id.*) The officer told Plaintiff to come outside. (*Id.*) Plaintiff came outside and sat down at a table in his front yard. (*Id.*) Several police officers came on to Plaintiff's front yard. (*Id.*) One of the officers sat down and began speaking to Plaintiff. (*Id.*)

Plaintiff contends the officers then "took control of [Plaintiff] and started handcuffing him." (*Id.*) Plaintiff alleges that as the police were handcuffing him, one of the officers, Defendant Adam Merritt, punched him in the face several times. (*Id.*) Plaintiff claims he cried out in pain and told the officers he could not see out of his right eye. (*Id.* at 4–5.) The officers then called for medical assistance. (*Id.* at 5.) Plaintiff was diagnosed with facial fractures caused by blunt force trauma and treated for his injuries. (*Id.*) Plaintiff was discharged from the hospital on or about September 3, 2020. (*Id.*)

On or about September 4, 2020, Plaintiff was arrested and charged with assault in the second degree, reckless endangerment, and resisting arrest. (*Id.* at 6.) Plaintiff was not convicted on these charges, and the case was transferred to the Kitsap County behavioral health court. (*Id.*) After the incident at his home, Plaintiff required additional medical treatment, including oral surgery, and lost vision and function in his right eye. (*Id.*) Plaintiff contends he is permanently partially disabled as a result of his encounter with the Bremerton police. (*Id.*)

On August 29, 2023, Plaintiff filed a complaint in this Court. (Dkt. No. 1.) Plaintiff asserts several claims under the Fourth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C § 1983. Plaintiff asserts claims against Bremerton police officers Merritt, Peterson, McComas, and Gorang, in their individual capacities, for excessive force and arrest without probable cause. (*Id.* at 9–13.) Plaintiff also asserts claims against the City of Bremerton and Bremerton police chief Tom Wolfe and unnamed supervisors John Does 1-5 in their individual and official capacities for excessive force, arrest without probable cause, and maintenance of an unconstitutional policy, practice, or custom. (*Id.* at 13–15.)

On October 16, 2023, Defendants filed a motion to dismiss Plaintiff's complaint with respect to claims against the City of Bremerton and police chief Tom Wolfe and unnamed John Does 1-5 in their official capacities. (Dkt. No. 6.) Defendants claim Plaintiff has failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (*Id.* at 4–11.)

## II.     LEGAL STANDARD

On a motion to dismiss for failure to state a claim, the Court must accept as true all well-pleaded factual allegations and construe the allegations in favor of the non-moving party. *See Wood v. City of San Diego*, 678 F.3d 1075, 1080 (9th Cir. 2012). The Court need not, however, assume the truth of conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

---

[1] Defendants also argued the summons served on Bremerton Mayor Greg Wheeler was insufficient process because it was not signed and sealed by the clerk as required by Rule 4(a). (*Id.* at 3–4.) Because the City of Bremerton has since waived service of the signed summons this part of Defendants' motion is now moot. (Dkt. No. 20 at 1.)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 547.

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986). To state a civil rights claim, a plaintiff must set forth the specific factual bases upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Vague and conclusory allegations of official participation in a civil rights violations are not sufficient to support a claim under § 1983. *Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir. 1982).

### III.   DISCUSSION

#### A.  City of Bremerton

"While local governments may be sued under [42 U.S.C.] § 1983, they cannot be held vicariously liable for their employees' constitutional violations." *Gravelet-Blondin v. Shelton*,

728 F.3d 1086, 1096 (9th Cir. 2013). Instead, to state a § 1983 claim against a municipality, a plaintiff must allege facts to support a reasonable inference that the execution of a policy, custom, or practice of the municipality was the "moving force" behind a deprivation of his constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–692 (1978).

There are three established scenarios in which a municipality may be liable for constitutional violations under § 1983. "First, a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'" *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2012) *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (quoting *Monell*, 436 U.S. at 708). Second, a plaintiff can prevail on a § 1983 claim against a municipality by identifying acts of omission, such as a pervasive failure to train its employees, "when such omissions amount to the local government's own official policy." *Id*. Finally, a municipality "may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier*, 591 F.3d at 1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–1347 (9th Cir. 1992)).

a. <u>Official Policy or Established Custom</u>

In support of the existence of a policy or custom, Plaintiff's complaint asserts that prior to September 2, 2020, the City of Bremerton, Wolfe, and John Does 1–5 "developed and maintained policies, practices, or customs" that were carried out by Defendant Merritt and other police officers who exhibited "either deliberate, reckless, or negligent indifference to the constitutional rights of persons being investigated, stopped, detained and when in the custody of

City of Bremerton Police Department" which caused the violation of Plaintiff's rights.  (Dkt. No. 1 at 13.)

Plaintiff's complaint further alleges that "it is believed" that it was the "policy, practice, or custom" of the City of Bremerton, Wolfe, and John Does 1–5 to fail to ensure Bremerton police officers under their supervision "did not unlawfully detain, arrest, assault, injure, and/or punish BPD detainees under their employees' supervision." (*Id.* at 13–14.)  The complaint alleges supervisors "knew or should have known of the propensities of Defendant Adam Merritt to perform an unlawful stops (*sic*), detentions, arrests, improper arrests, assaults, and excessive uses of force, but took no steps to train, correct Defendant Merritt's and/or Defendants Peterson, McComas, and Gorang's abuse of authority, or discourage this unlawful use of authority." (*Id.* at 14.)

Defendants argue Plaintiff has merely set forth a formulaic recitation of his cause of action and has failed to allege any facts regarding any actual City policies, practices, and customs that led to the alleged violation of his rights. (Dkt. No. 6 at 7–8.)  Plaintiff argues Defendants are asking the Court to apply a heightened pleading standard and contends the Court should not dismiss Plaintiff's complaint merely because it uses boilerplate language. (Dkt. No. 13 at 1.)

*Monell* claims must comply with the pleading requirements set forth by the Supreme Court in *Twombly* and *Ashcroft*:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

To survive a motion to dismiss, Plaintiff must set forth facts regarding the specific nature of the alleged policy, custom or practice. *Id.* at 637. Merely reciting the elements of a *Monell* claim and stating the subject to which the alleged policy relates (excessive force, arrest without probable cause) is insufficient. For an unwritten policy or custom to support a *Monell* claim, it must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *See Monell*, 436 U.S. at 691. Plaintiff has failed to allege *facts* identifying the existence of an official policy or established custom. Nor has Plaintiff alleged *facts* identifying an unwritten policy or custom so persistent and widespread that it constituted a permanent and well settled practice. Plaintiff has not alleged *facts* to support a reasonable inference that any policy, custom, or practice of the City of Bremerton was the moving force behind the alleged deprivation of his rights.

Accordingly, Plaintiff's complaint fails to state a claim with respect to an official policy or established custom.

      b.  <u>Failure to Train</u>

Plaintiff's complaint alleges the City of Bremerton, Wolfe, and John Does 1–5 failed to ensure "adequate screening of police officer candidates during the hiring process, or adequate training, supervision, and not having discipline of police officers after they were hired and on duty under the Defendants' purported supervision." (Dkt. No. 1 at 14.) Plaintiff's complaint further alleges these Defendants "did not require appropriate in-service training or retraining" of the police officers who allegedly violated Plaintiff's rights "and are believed to have violated other citizens' rights on other occasions." (*Id.*) The complaint alleges the police department failed to discipline officers who "were known to have engaged in misconduct." (*Id.*)

ORDER ON MOTION TO DISMISS (DKT. NO. 6) - 7

1    Plaintiff's complaint alleges Defendants "knew or should have known of the propensities
2    of Defendant Adam Merritt to perform an unlawful stops, detentions, arrests, improper arrests,
3    assaults, and excessive uses of force, but took no steps to train, correct Defendant Merritt's
4    and/or Defendants Peterson, McComas, and Gorang's abuse of authority, or discourage this
5    unlawful use of authority." (*Id.*)

6    "In limited circumstances, a local government's decision not to train certain employees
7    about their legal duty to avoid violating citizens' rights may rise to the level of an official
8    government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To
9    allege municipal liability under § 1983 for failure to train, Plaintiff must allege: (1) the existing
10   training program is inadequate in relation to the tasks the particular officers must perform; (2)
11   the failure to train amounts to deliberate indifference to the rights of persons with whom the
12   police come into contact; and (3) the inadequacy of the training actually caused the deprivation
13   of the alleged constitutional right. *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir.
14   1989). "A municipality's culpability for a deprivation of rights is at its most tenuous where a
15   claim turns on a failure to train." *Connick*, 563 U.S. at 61.

16   Plaintiff's complaint contains vague and conclusory assertions about the alleged failure to
17   train, and sets forth no facts concerning the existing program or why it was inadequate to the
18   tasks the officers performed in this case. Plaintiff's complaint contains no *facts* concerning how
19   the alleged failure to train amounted to deliberate indifferent of Plaintiff's rights. Finally, the
20   complaint alleges no facts concerning how the supposed inadequacy of the training program
21   caused the deprivation of Plaintiff's constitutional rights.

22   Accordingly, Plaintiff has failed to state a claim for relief based on a failure to train.

23
24

     c. <u>Ratification</u>

Plaintiff alleges Defendant Wolfe is "believed to be" the City of Bremerton official "who ultimately approved, and/or ratified Defendant Merritts' use of force and arrest procedures in this case." (Dkt. No. 1 at 8.)  Plaintiff contends Wolfe is believed to be the police department's chief policy maker "regarding implementing the City of Bremerton Police Department's employees' policies, practices and customs for use of force policies, practices and customs and the management of arrest policies, practices and customs." (*Id.*)  Plaintiff's complaint alleges that in determining and implementing policy, Wolfe is believed "to rely upon the assistance of, and policy making, development and implementation Defendants John Doe Supervisors, who are believed to be City of Bremerton Police Department employees." (*Id.*)

Ratification under *Monell* requires that a local government "ratif[y] a subordinate's unconstitutional decision or action and the basis for it." *Clouthier*, 591 F.3d at 1250 (quotations omitted).  "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Id*. (quotations omitted).  "There must, however, be evidence of a conscious, affirmative choice" on the part of the authorized policymaker. *Gillette,* 979 F.2d at 1347.  That an officer was not reprimanded or provided with additional training cannot support a theory of ratification without more. *Clouthier*, 591 F.3d at 1253–1254.  But a "single decision by a municipal policymaker may be sufficient to trigger section 1983 liability under *Monell*, even though the decision is not intended to govern future situations." *Gillette*, 979 F.2d at 1347.

The complaint contains no alleged *facts* that City of Bremerton policymakers approved a subordinate's decision and the basis for it.  Plaintiff has alleged Defendant Wolfe is the Bremerton Police Department's authorized policy maker.  However, Plaintiff's complaint

contains a conclusory allegation that Wolfe ratified Defendant Merritt's alleged conduct, but contains no facts concerning any conscious, affirmative choice made by Wolfe.

Rather, the complaint merely speculates that the police officers who allegedly violated Plaintiff's rights "believed that their actions or inactions would not be properly monitored by supervisory officers and that Defendant Merritt's misconduct would not be investigated or sanctioned but would be tolerated, and/or ratified." (Dkt. No. 1 at 15.)  Further, to the extent Plaintiff's complaint alleges Defendants ratified Defendant Merritt's conduct by not disciplining the officers involved or failing to provide additional training, these allegations cannot support a ratification theory.  (*See* Dkt. No. 1 at 14.)

Accordingly, Plaintiff has failed to state a claim against Defendants based on ratification.

**B.  Tom Wolfe and John Does 1-5**

Defendants contend the official capacity claims against Defendants Wolfe and John Does 1-5 are duplicative of Plaintiff's claims against the City of Bremerton.  (Dkt. No. 6. at 10.)

"A suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).  Any official capacity claims "should be analyzed together with claims against the entity." *Crema v. Las Vegas Metro. Police Dep't*, Case No. 2:17-cv-01535-RFB-VCF, 2023 WL 6262556 at *14 (D. Nev. Sept. 25, 2023).  Thus, to the extent Plaintiff has failed to state a claim with respect to the City of Bremerton, Plaintiff has also failed to state a claim against Defendants Wolfe and John Does 1–5 in their official capacities.

Moreover, any claims against Defendants Wolfe and John Does 1–5 in their official capacity would be duplicative of a claim against the City.  *Vance v. County of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("if individuals are being sued in their official capacity as

municipal officials *and* the municipal entity itself is also being sued, then claims against the individuals are duplicative and should be dismissed.") (italics in original).

### IV.   ORDER

Defendant's motion to dismiss (Dkt. No. 6) is GRANTED without prejudice. Plaintiff will have until **March 15, 2024** to file an amended complaint that addresses the deficiencies identified herein. If an amended complaint is not filed by this deadline, the Court will enter an order dismissing the complaint with prejudice as to any causes of action against the City of Bremerton and Defendants Tom Wolfe and John Does 1-5 in their official capacities.

Dated this 15th day of February, 2024.

David G. Estudillo
United States District Judge