1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11    JOSEPH T REDAL,                          CASE NO. 23-5782 DGE-RJB

             Plaintiff,                        ORDER ON MOTION TO DISMISS

12           v.

13    ADAM MERRITT, City of Bremerton
      Police Department (BPD) #447, J. DOE
14    SPOUSE, and the marital community
      comprised thereof; City of Bremerton
15    Police Department (BPD) Corporal KEVIN
      PETERSON #427, J. DOE WIFE, and the
16    marital community comprised thereof, City
      of Bremerton Police Department (BPD)
17    Officer ALLEN MCCOMAS #424, J. DOE
      WIFE, and the marital community
18    comprised thereof; City of Bremerton
      Police Department (BPD) Detective
19    BROCK GORANG #456, J. DOE WIFE,
      and the marital community comprised
20    thereof; J. DOES 1-5 City of Bremerton
      Police Department (BPD) Supervisory
21    Officers and JANE/JOHN DOE WIVES,
      and the marital communities comprised
22    thereof; Sgt. JEFFREY SCHAEFER #419,
      and the marital community comprised
23    thereof, Sgt. BRYAN HALL #412, and the
      marital community comprised thereof, City

24

ORDER ON MOTION TO DISMISS - 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

of Bremerton Chief of Police, TOM
WOLFE and JANE DOE WIFE, and the
marital community comprised thereof, and
the CITY OF BREMERTON, a municipal
corporation,

　　　　　　　　Defendants.

　　　This matter comes before the Court on Defendant City of Bremerton ("City") and, in

their Official Capacities, Defendants Tom Wolfe, Bryan Hall, Jeffrey Schaefer, and J. Does 1-5

City of Bremerton Supervisory Officers' Motion to Dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6).  Dkt. 33.  The Court has considered the pleadings filed regarding the motion

and the remaining record.

　　　In this case, the Plaintiff Joseph Redal alleges that his constitutional rights were violated

when Bremerton, Washington police officers arrested and punched him, fracturing his face, on

September 2, 2020 and arrested him again on September 4, 2020.  Pursuant to 42 U.S.C. § 1983,

he asserts Fourth and Fourteenth Amendment claims against the officers directly involved in the

incidents, against Defendants Wolfe, Hall, Schaefer, and J. Does 1-5 City of Bremerton

Supervisory Officers, in their official and individual capacities, and against the City.

　　　An official capacity suit against a municipal officer is equivalent to a suit against the

entity. *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985).  Accordingly, the moving parties'

motion to dismiss Plaintiff's official capacity claims ONLY against Wolfe, Hall, Schaefer, and J.

Does 1-5 City of Bremerton Supervisory Officers (Dkt. 33) should be granted.  Official capacity

claims asserted against Wolfe, Hall, Schaefer, and J. Does 1-5 City of Bremerton Supervisory

Officers should be dismissed as duplicative.  The claims asserted against the City will be the

subject of this motion.

1       The City's first motion to dismiss the claims against it was granted on February 15, 2024.

2  Dkt. 31.  The Court held that the Plaintiff failed to plead sufficient facts to support his claims

3  against the City.  *Id.*  The Plaintiff was given an opportunity to amend his complaint (*Id.*) which

4  he did (Dkt. 32).

5       The City now moves to dismiss the claims asserted against it in the Amended Complaint.

6  Dkt. 33.  The motion (Dkt. 33) should be granted.  The Amended Complaint's plausible

7  allegations are again insufficient to state a claim against the City.

8                                    I.      **FACTS**

9       The Amended Complaint asserts that on September 2, 2020, Mr. Redal was on his front

10 porch when he called out to a motorist.  Dkt. 32 at 4.  Eventually, City of Bremerton Police

11 Department ("BPD") squad cars arrived.  *Id.*  Initially, the officers talked with Mr. Redal, but

12 then Defendant officers Kevin Peterson, Adam Merritt, and Allen McComas allegedly "put their

13 hands on Redal, took control of him and started handcuffing him."  *Id.* at 5.  As they were

14 handcuffing him, the Amended Complaint alleges that Officer Merritt punched Mr. Redal

15 multiple times, resulting in facial fractures and an eye injury.  *Id.*  Mr. Redal was taken to the

16 hospital.  *Id.*  He was discharged on September 3, 2020.  *Id.* at 5-6.  On September 4, 2024, as

17 Mr. Redal was walking on a public street, Defendant officer Brock Gorang arrested him again.

18 *Id.* at 6.

19      According to the Amended Complaint, he was charged with second degree assault,

20 reckless endangerment, and resisting arrest.  Dkt. 32 at 6.  Mr. Redal has not been convicted of

21 these charges; he alleges that his criminal prosecution was moved to Kitsap County, Washington

22 Behavioral Health Court.  *Id.*

23

24

ORDER ON MOTION TO DISMISS - 3

1         As it relates to the City, the Amended Complaint alleges that "use of force **incidents** in

2   Bremerton are four times higher in Bremerton than the national average use of force **citizens'**

3   **complaints**." Dkt. 32 at 9 (*emphasis added*).  It contends that the number of citizen complaints

4   about the use of force in Bremerton are 15 times lower than the national average.  *Id.*  From these

5   statistics, the Amended Complaint contends that that BPD's "use of force policies, practices, and

6   customs as carried out by the Defendants named herein are either ineffective or are not being

7   followed." *Id.* at 9-10.  It further maintains that these statistics show that "even if a citizen

8   complains or reports [BPD officers] use of excessive force, Defendant City of Bremerton does

9   not discipline its officers for excessive force." *Id.* at 9-10.  It then contends that "[s]ince BPD

10  use of force is almost four times the national average[,] this is further evidence that the City and

11  its supervising BPD employees' officers Defendant John Doe Supervisors 1-5, including

12  Defendants Sgt. Hall and Sgt. Schaefer and Chief Wolfe ratified the unconstitutional use of force

13  used against Plaintiff Redal." *Id.* at 10.  The Amended Complaint refers to a 2006 U.S.

14  Department of Justice study (attached as Exhibit A to the Amended Complaint (Dkt. 32-1))

15  ("2006 DOJ study") and the BPD's 2020 Annual Report and Use of Force Statistics (attached as

16  Exhibit B to the Amended Complaint (Dkt. 32-2)) ("2020 BPD Report"), as the source of its

17  statistics.  Dkt. 32.

18        The Amended Complaint alleges, that contrary to BPD policy, the officers on the scene

19  failed to report their use of force and failed to use their body cameras to record the use of force.

20  Dkt. 32 at 11.  It further contends that no BPD supervisor was called to the scene on September

21  2, 2020, in contravention of BPD's policy 300.7, which requires a supervisor to respond to the

22  application of force resulting in injury, if reasonably available.  *Id.* at 10.  The Amended

23  Complaint asserts that none of the officers were disciplined for their conduct toward Mr. Redal.

24

1   *Id.* at 11.  It alleges that, based on their experiences at BPD, the responding officers "thought it

2   was okay to use excessive force . . . since no one would be disciplined."  *Id.* at 11 and 19.  The

3   Amended Complaint further maintains that the officers did not memorialize their use of force

4   contrary to BPD policies and were not disciplined shows that the City "ratified this kind of

5   unlawful use of force."  *Id.*

6         The Amended Complaint contends that the City did not adequately screen police officer

7   candidates during the hiring process and did not adequately train or supervise them.  Dkt. 32 at

8   18.  It asserts that the City Defendants did not "discipline police officers after they were hired

9   and on duty."  *Id.*  It maintains that "[t]his is apparent because there is nothing in the policy

10  manual that allows an officer to punch an arrestee in the face with such force that it requires

11  facial reconstruction surgery."  *Id.*  The Amended Complaint asserts that the policy violations

12  that occurred here are either the result of a failure to train or "of a widespread practice by Chief

13  Wolfe that allows officers to use excessive force without consequences."  *Id.*  It alleges that the

14  City "did not require appropriate in-service training or retraining" of the BPD officers who

15  violated Plaintiff's rights, who are "believed to have violated other citizens' rights on other

16  occasions," and those "who were known to have engaged in misconduct."  *Id.* at 18-19.  It

17  maintains that the City "knew or should have known of the propensities of Defendant Adam

18  Merritt to perform unlawful . . . arrests and excessive uses of force but took no steps to train,

19  correct [the officer's] abuse of authority."  *Id.* at 19.

20        As to Mr. Redal's second arrest on September 4, 2020, the Amended Complaint alleges

21  that no officer was disciplined.  Dkt. 32 at 12.  It asserts that this is further evidence of a policy

22  or custom that a failure to follow policies will not be disciplined.  *Id.*  It further contends that the

1    City's failure to discipline Officer Gorang is evidence of the City's ratification of Officer

2    Gorang's decision to arrest Mr. Redal for a second time.  *Id.*

3        The Amended Complaint asserts that Chief Wolfe has displayed "reckless disregard for

4    the BPD policy manual, its practices and customs" in other situations.  Dkt. 32 at 11.  It points to

5    a newspaper article about an 18-year-old civilian police cadet who was permitted to take police

6    property home, use the police shooting range, and alleged to have had sex with one of the BPD

7    officers under Chief Wolfe's command.  *Id.*  The article, dated July 16, 2011, is attached to the

8    Amended Complaint as Exhibit C.  Dkt. 32-3.

9                                  II.    **DISCUSSION**

10   **A.  MOTION TO DISMISS STANDARD**

11       Fed. R. Civ. P. 12(b)(6) motions to dismiss may be based on either the lack of a

12   cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

13   *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9ᵗʰ Cir. 1990).  Material allegations

14   are taken as admitted and the complaint is construed in the plaintiff's favor.  *Keniston v. Roberts*,

15   717 F.2d 1295 (9ᵗʰ Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

16   does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

17   entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

18   elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55

19   (2007)(*internal citations omitted*); *See also Ashcroft v. Iqbal,* 556 U.S. 662, 678

20   (2009)("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

21   statements, do not suffice.").  "Factual allegations must be enough to raise a right to relief above

22   the speculative level, on the assumption that all the allegations in the complaint are true (even if

23

24

doubtful in fact)." *Twombly* at 555.  The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 547.

When evaluating the sufficiency of a pleading under Rule 12(b)(6), a court reviews only the allegations in the complaint and any attachments or documents incorporated by reference. *Koala v. Khosla,* 931 F.3d 887, 894 (9th Cir. 2019).  "Certain written instruments attached to pleadings may be considered part of the pleading."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Although for purposes of a motion to amend or for a motion to dismiss the court ordinarily credits the allegations in the complaint as true, it need not "accept as true allegations that contradict matters properly subject to judicial notice, . . . by exhibit," or incorporated by reference into the complaint. *Gonzalez v. Planned Parenthood of Los Angeles,* 759 F.3d 1112, (9th Cir. 2014); *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998)(the court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").

As he did in opposing the City's first motion to dismiss (Dkt. 13 at 2), the Plaintiff again argues that *Iqbal/Twombly* is a "heightened pleading standard" that should not be applied to his claims against the City (Dkt. 35).

This argument was rejected in the February 15, 2024 order granting the City's first motion to dismiss.  Dkt. 31 at 3-4, and 6-7.  The Plaintiff's argument should be construed as a motion for reconsideration.  It is untimely under Western Dist. of Washington Local Rule 7(h)(2), which requires motions for reconsideration be filed within fourteen days of the order to which they relate.  The Plaintiff's motion for reconsideration of the standard of review (Dkt. 35) should be denied.

1

**B.  SECTION 1983 MUNICIPAL LIABILITY STANDARD**

2

To assert a federal claim for violation of their constitutional rights under § 1983 against a

3

city, (sometimes referred to as a *Monell*[1] claim) a plaintiff must show that "their injury was

4

caused by a municipal policy or custom."  *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th

5

867, 883 (9th Cir. 2022).  *Monell* claims cannot predicate municipal liability for constitutional

6

violations of its officers under a theory of *respondeat superior*.  *Lockett v. Cnty. of Los Angeles*,

7

977 F.3d 737, 741 (9th Cir. 2020).

8

The City Defendants argue that Mr. Redal has failed to point to a municipal policy or

9

custom that caused a violation of his constitutional rights.  Dkt. 33.

10

Mr. Redal can satisfy *Monell's* "policy or custom" requirement in one of three ways.

11

First, the City may be held liable if it acted "pursuant to an expressly adopted official policy."

12

*Sabra* at 883 (*citation omitted*).  Second, it "may be held liable based on a longstanding practice

13

or custom."  *Id.*  Third, the City "may be held liable if the individual who committed the

14

constitutional tort was an official with final policy-making authority or such an official ratified a

15

subordinate's unconstitutional decision or action and the basis for it."  *Id.*

16

A plausible reading of the Amended Complaint suggests that Mr. Redal attempts to use

17

the last two grounds to establish *Monell* liability: custom or practice and ratification.  The

18

Amended Complaint alleges that based on statistics and what happened here, the City has a

19

custom or practice of not disciplining officers for violations of BPD policies.  It contends that,

20

based on what happened, the City has a custom or practice of improperly screening police officer

21

candidates, failing to supervise them, and inadequately training them.  The Amended Complaint

22

23

24

[1] *Monell v. Dept. of Social Servs.,* 436 U.S. 658 (1978).

1   also asserts that the City ratified the officers' actions based on the statistical evidence and the

2   fact that no officer was disciplined here.  Each of the grounds will be considered.

3   **C. CUSTOM OR PRACTICE OF NOT DISCIPLINING FOR NOT FOLLOWING
       POLICIES**

4

5       "Establishing municipal liability through the existence of a longstanding practice or

    custom is predicated on the theory that the relevant practice is so widespread as to have the force

6   of law." *Sabra* at 884 (*citation omitted*).  A plaintiff cannot allege a widespread practice or

7   custom based on isolated or sporadic incidents; liability must be "founded on practices of

8   sufficient duration, frequency and consistency that the conduct has become a traditional method

9   of carrying out policy." *Id.*

10      The Amended Complaint alleges that "statistics" show that the City has a policy of not

11  disciplining any officers for the use of excessive force, or those "known to engage in

12  misconduct," in violation of BPD policies.  Dkt. 32.

13      Mr. Redal's "statistics" are unhelpful and do not plausibly support his contentions. They

14  do not make proper comparisons.  They compare incidents where force was used (whether

15  excessive or not) in Bremerton in 2020 to citizen complaints about excessive force in a 2006

16  DOJ study.  The 2006 DOJ study looked at data from 2002 of citizen complaints about the use of

17  force by large state and local law enforcement agencies (those with 100 or more sworn officers).

18  The statistics measure two different things – incidents and complaints.  Further, it is doubtful that

19  this data is helpful in examining events 18 years later.  There is no plausible allegation that the

20  BPD would be considered a "large" law enforcement agency, in any event.

21      The Amended Complaint alleges that officers in the department knew that they would not

22  be punished for policy violations and so felt free to commit constitutional violations.  Dkt. 32.

23  This allegation is not plausible because the 2020 BPD Report (which again is attached to the

24

1   Amended Complaint), discusses disciplinary actions taken against officers for violation of

2   policies.  *See e.g.* 32-2.

3          The Amended Complaint also asserts that, contrary to BPD policies:  (1) the officers at

4   the scene failed to use their body cameras to record their use of force, (2) the officers at the scene

5   failed to report the use of force, and (3) failed to contact their supervisors who were also, if

6   possible, supposed to come to the scene and report the force used.  Dkt. 32. The Amended

7   Complaint contends that none of these officers were punished.  *Id.*

8          The Plaintiff's attempt at demonstrating that there is a longstanding policy of not

9   punishing officers for policy violations simply by alleging that the officers involved with Mr.

10  Redal broke policies and were not punished is insufficient.  "A section 1983 plaintiff may

11  attempt to prove the existence of a custom or informal policy with evidence of repeated

12  constitutional violations for which the errant municipal officials were not discharged or

13  reprimanded." *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992). However, as was the

14  case with Plaintiff's original complaint, the Amended Complaint (Dkt. 32) fails to allege any

15  plausible facts to support its contentions that errant BPD officers are not discharged or

16  reprimanded for repeated constitutional violations.  "[M]unicipalities are not subject to section

17  1983 liability under a *respondeat superior* theory for the isolated torts of their employees."

18  *McKinley v. City of Eloy*, 705 F.2d 1110, 1116 (9th Cir. 1983).  To the extent Mr. Redal bases

19  his claims against the City on a policy of not disciplining officers when they fail to follow policy,

20  his claims should be dismissed.

21      **D.  CUSTOM OR PRACTICE OF FAILURE TO SCREEN, TRAIN, AND
           SUPERVISE BPD OFFICERS**

22

23         The Amended Complaint contends that the City did not adequately screen police officer

24  candidates during the hiring process and did not adequately train or supervise them.  Dkt. 32.  It

1   fails to allege any facts to support its contentions.  Like was the case with the original complaint,

2   the Amended Complaint (Dkt. 32) merely contains conclusory allegations of the elements of a

3   failure to screen, supervise and train claim.  As was explained in the Court's February 15, 2024

4   order granting the City's first motion to dismiss (Dkt. 31), this is insufficient.  *Doughtery v. City*

5   *of Covina,* 654 F3d. 892, 900 (2011)(holding that plaintiff's failure to allege sufficient facts to

6   support its claims for inadequate training and supervision warranted dismissal of those claims;

7   mere formulaic recitation of the claims elements was insufficient).  Although the court takes all

8   plausible factual allegations in the Amended Complaint as true, it is not "bound to accept as true

9   a legal conclusion couched as a factual allegation." *Iqbal* at 678.  Mr. Redal's *Monell* claim

10  (based on an alleged City custom or practice of insufficiently screening candidates, inadequately

11  training and supervising officers) should be dismissed.

12      **E.  RATIFICATION**

13          Mr. Redal also contends that the City is liable under *Monell* because the City ratified the

14  officers' actions.  A municipality can be liable for an isolated constitutional violation if a final

15  policymaker ratified a subordinate's actions.  *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir.

16  1999).  "To show ratification, a plaintiff must prove that the authorized policymakers approve a

17  subordinate's decision and the basis for it." *Id.* at 1239.

18          Mr. Redal's reliance on "statistics" to demonstrate ratification is unavailing.  As

19  explained above in Section II.C., Mr. Redal's "statistics" are not helpful.

20          To the extent that Mr. Redal basis his ratification claim on the City's alleged failure to

21  discipline the officers involved in the encounters with him, his claim should be dismissed.  As

22  was stated in the February 15, 2024 order granting the City's first motion to dismiss, a failure to

23  discipline, without more, does not meet the requirements of ratification.  *Clouthier v. Cnty. of*

24

1    *Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010), *overruled on other grounds by Castro v.*

2    *Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).  Like the original complaint, the Amended

3    Complaint (Dkt. 32) contains no plausible allegation that the City was aware of the officers'

4    actions or their basis for them.  *Christie* at 1238.  Mr. Redal's *Monell* claim, based on

5    ratification, should be dismissed.

6                                    III.    **ORDER**

7         It is **ORDERED** that:

8         •    Defendant City of Bremerton and, in their Official Capacities, Defendants Tom

9              Wolfe, Bryan Hall, Jeffrey Schaefer, and J. Does 1-5 City of Bremerton

10             Supervisory Officers' Motion to Dismiss pursuant to Federal Rule of Civil

11             Procedure 12(b)(6) (Dkt. 33) **IS GRANTED**;

12                  o    Claims against the City of Bremerton **ARE DISMISSED**; and

13                  o    Claims against Defendants Tom Wolfe, Bryan Hall, Jeffrey Schaefer, and

14                       J. Does 1-5 City of Bremerton Supervisory Officers, asserted against them

15                       in their official capacities only, **ARE DISMISSED**.

16        The Clerk is directed to send uncertified copies of this Order to all counsel of record and

17   to any party appearing pro se at said party's last known address.

18        Dated this 20th day of August, 2024.

19

20

21        ROBERT J. BRYAN
          United States District Judge

22

23

24

ORDER ON MOTION TO DISMISS - 12